1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| SARA E. HUFFMAN McCLUSKEY, | Case No. EDCV 13-1520 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

17
18

## I.    SUMMARY

19
20
21
22

On August 23, 2013, plaintiff Sara E. Huffman McCluskey ("plaintiff")
filed a Complaint seeking review of the Commissioner of Social Security's denial
of plaintiff's application for benefits.  The parties have consented to proceed
before the undersigned United States Magistrate Judge.

23
24
25
26

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; September 2, 2013 Case Management Order ¶ 5.

27
28

///

///

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On June 1, 2010, plaintiff filed applications for child's insurance[2] and

7    Supplemental Security Income benefits.  (Administrative Record ("AR") 13, 144,

8    148).  Plaintiff asserted that she became disabled on June 15, 2000, due to

9    seizures, depression, lupus, anxiety, scleroderma, muscle weakness, fibromyalgia,

10   swelling, memory problems, headaches, and dizziness.  (AR 166).  The ALJ

11   examined the medical record and heard testimony from plaintiff (who was

12   represented by counsel) and medical and vocational experts on February 14, 2012.

13   (AR 30-57).

14   On March 29, 2012, the ALJ determined that plaintiff was not disabled

15   through the date of the decision.  (AR 13-24).  Specifically, the ALJ found:

16   (1) plaintiff suffered from the following severe impairments:  mixed type

17   connective tissue disease, collagen vascular disease, seizure disorder, and mood

18   disorder (AR 15); (2) plaintiff's impairments, considered singly or in combination,

19   did not meet or medically equal a listed impairment (AR 15-16); (3) plaintiff

20   retained the residual functional capacity to perform medium work (20 C.F.R.

21

22   _____

     [1]The harmless error rule applies to the review of administrative decisions regarding
23   disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of
     application of harmless error standard in social security cases) (citing, *inter alia*, Stout v.
24   Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

25   [2]A disabled adult whose parent is (or was at the time of death) entitled to Social Security
26   old age or disability insurance benefits may receive Disabled Adult Child benefits if the claimant
     can show, among other things, that at the time an application for benefits was filed, the claimant
27   was unmarried, was dependent on the wage-earning parent, and was "under a disability . . . [that]
     began before he attained the age of 22. . . ."  42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350(a); see
28   also Smolen v. Chater, 80 F.3d 1273, 1279-80 (9th Cir. 1996) (citations omitted).

§§ 404.1567(c), 416.967(c))[3] with additional limitations (AR 16); (4) plaintiff did not have past relevant work (AR 22); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically hand packager, hospital cleaner, and floor waxer (AR 22-23); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 19).

The Appeals Council denied plaintiff's application for review.  (AR 1).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

///

---

[3]The ALJ determined that plaintiff:  (i) could lift and/or carry 50 pounds occasionally and 25 pounds frequently; (ii) could stand and/or walk for six hours, and sit for six hours in an eight-hour workday with normal breaks every two hours; (iii) could climb stairs but not ladders; (iv) could not balance, work at heights, or work on heavy equipment, motorized vehicles, or heavy machinery; (v) could not work where safety of others would be compromised; (vi) required seizure precautions; (vii) could have occasional contact with the public; and (viii) was limited to unskilled, routine, and repetitive tasks.  (AR 16).

(1)     Is the claimant presently engaged in substantial gainful activity?  If
        so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit
        the claimant's ability to work?  If not, the claimant is not
        disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of
        impairments, meet or equal an impairment listed in 20 C.F.R.
        Part 404, Subpart P, Appendix 1?  If so, the claimant is
        disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to
        perform claimant's past relevant work?  If so, the claimant is
        not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow the claimant to adjust to other work that
        exists in significant numbers in the national economy?  If so,
        the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at
1110 (same).

The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch
v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of
proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal

1   error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

2   2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

3   (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

4   mind might accept as adequate to support a conclusion." Richardson v. Perales,

5   402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

6   mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

7   Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

8          To determine whether substantial evidence supports a finding, a court must

9   "'consider the record as a whole, weighing both evidence that supports and

10  evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.

11  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

12  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

13  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

14  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.  DISCUSSION**

### A.    The ALJ Did Not Materially Err in Considering the Medical Evidence

#### 1.    Pertinent Law

19         In Social Security cases, courts employ a hierarchy of deference to medical

20  opinions depending on the nature of the services provided.  Courts distinguish

21  among the opinions of three types of physicians:  those who treat the claimant

22  ("treating physicians") and two categories of "nontreating physicians," namely

23  those who examine but do not treat the claimant ("examining physicians") and

24  those who neither examine nor treat the claimant ("nonexamining physicians").

25  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

26  treating physician's opinion is entitled to more weight than an examining

27  physician's opinion, and an examining physician's opinion is entitled to more

28

weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the

---

[4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1   [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the

2   treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,

3   602 (9th Cir. 1989).

4                       **2.     Seizure Disorder**

5           Plaintiff contends that a reversal or remand is warranted because the ALJ

6   failed properly to consider evidence in the record of plaintiff's "daily absence

7   seizures."  (Plaintiff's Motion at 3-6) (citing AR 40-41 [plaintiff's testimony that

8   she experiences 3-5 seizures per day, she gets confused after a seizure, and

9   sometimes falls]; AR 251 [3/20/10 abnormal EEG report which also noted

10  plaintiff's complaint of daily seizures]; AR 291 [clinical assessment of plaintiff

11  noting "epilepsy (seizures)" as "current" health problem]; AR 632 [2005 report

12  noting plaintiff's "seizure disorder"]).  The Court disagrees.

13          First, the ALJ considered at length the medical evidence regarding

14  plaintiff's "history of seizure disorder" and found that plaintiff ultimately had been

15  "conservatively treated with medications" and had "normal" examinations.  (AR

16  19) (citing Exhibit 3F at 3 [AR ][seizure history "extensively documented"];

17  Exhibit 4F [AR 247]; Exhibit 6F at 8 [AR 260]; Exhibit 24F at 18-21 [AR 621-

18  24].

19          Second, the ALJ found plaintiff's seizure disorder to be a severe

20  impairment, and accounted in plaintiff's residual functional capacity assessment

21  for limitations related to the impairment by precluding plaintiff from work around

22  heavy equipment, motorized vehicles, or heavy machinery and where safety of

23  others would be compromised, and requiring "seizure precautions."  (AR 16).

24  Although plaintiff contends "that the frequency of her seizures would be

25  significantly disruptive to her ability to sustain full time competitive employment"

26  and her seizures would be disabling because they "would contribute to a

27  significant portion of being off task 20 to 30% of [the time]" (Plaintiff's Motion at

28

1  4),[5] this Court will not second-guess the ALJ's reasonable determination

2  otherwise, even if the evidence could give rise to inferences more favorable to

3  plaintiff.  See Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

4        Finally, Dr. Samuel Landau, the medical expert, essentially testified that he

5  had reviewed plaintiff's medical records and that the evidence of plaintiff's

6  seizure disorder supported no limitations beyond those identified in the ALJ's

7  residual functional capacity.  (AR 21).  As the ALJ noted, Dr. Landau reached his

8  opinion, in part, based on (i) a September 19, 2011 electroencephalogram ("EEG")

9  which showed "left temporal lobe dysfunction" with "sharp waves" that were

10  possibly "seizure-focused"; (ii) an MRI of plaintiff's brain which indicated a cyst

11  in the left temporal lobe which doctors later believed was likely an "incidental

12  finding"; (iii) an MRA of plaintiff's brain that was "within normal limits"; and

13  (iv) a 72 hour ambulatory EEG which was consistent with "a seizure focus in the

14  right anterior temporal region."  (AR 21, 37-38) (citing Exhibit 1F at 2 [AR 231];

15  Exhibit 2F at 2, 3 [AR 233, 234]; Exhibit 5F at 2 [AR 251]).  In addition, the ALJ

16  noted that reports of two video EEG monitoring sessions of plaintiff also showed

17  no evidence of "subclinical, electrographic, electroclinical, or behavioral seizures"

18  or "any potential epileptogenic abnormalities."  (AR 19, 621-24).  Dr. Landau's

19  testimony constituted substantial evidence supporting the ALJ's decision since it

20  was supported by and consistent with such medical evidence.  See Morgan, 169

21  F.3d at 600 (testifying medical expert opinions may serve as substantial evidence

22  when "they are supported by other evidence in the record and are consistent with

23  it").

24        Accordingly, a remand or reversal is not warranted on this basis.

25  ///

26

27      [5]Plaintiff asserts that her seizures occur "3 to 5 times per day." (Plaintiff's Motion at 3)
(citing AR 40-41).  However, as discussed in Part IVB infra, the ALJ properly rejected such
28  allegation as not supported by the medical evidence.  (AR 21-22).

### 3.    GAF Scores

Plaintiff contends that a reversal or remand is warranted because the ALJ failed properly to consider the Global Assessment of Functioning ("GAF") scores noted in plaintiff's medical records.  (Plaintiff's Motion at 5-6) (citing AR 278 [GAF score of 45]; 280 [GAF score of 45], 297 [GAF score of 45], 312 [GAF score of 20], 314 [GAF score of 50], 591 [GAF score of 45]).  The Court disagrees.

To the extent plaintiff suggests that the ALJ failed to address plaintiff's GAF scores, the record belies such an assertion.  In the decision, the ALJ expressly considered that plaintiff had been assigned low GAF scores.  (AR 20 nn.1-3).

Moreover, the ALJ properly gave "limited evidentiary value" to the GAF scores.  (AR 20 n.1).  Contrary to plaintiff's suggestion, GAF scores, standing alone, are not determinative of the severity of mental impairments for purposes of social security disability claims.  See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); cf. McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error); see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity).

Accordingly, a remand or reversal on this basis is not warranted.

### 4.    Symptoms of Major Depressive Disorder

Plaintiff contends that a reversal or remand is warranted because the ALJ failed properly to consider medical records which documented "abnormalities

consistent with a severe major depressive disorder such as [plaintiff] cutting herself (self mutilating) and pulling out her hair."  (Plaintiff's Motion at 5) (citing AR 281, 319).  The Court disagrees.

The ALJ was not required to discuss at length medical evidence which he did not reject, and which was cumulative.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  An ALJ must provide an explanation only when he rejects "significant probative evidence."  See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).  Here, a March 11, 2010 Adult Clinical Assessment noted that plaintiff suffered from "depression" with symptoms of "chronic cutting" and "hair pulling" (AR 281) and a mental status evaluation in an August 2, 2010 Psychosocial Assessment of plaintiff documented "cutting for about a year" (AR 319).  In his decision, the ALJ acknowledged that plaintiff testified that she engaged in self mutilation when she got frustrated, and stated that his "residual functional capacity [assessment] . . . generously consider[ed] [plaintiff's] subjective complaints."  (AR 18, 21).  Simply because the ALJ did not discuss cumulative findings in two 2010 psychological assessments does not mean he failed to consider that evidence.  See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").  Moreover, plaintiff points to no evidence that such isolated notes reflected any functional limitations that were not otherwise accounted for in the ALJ's residual functional capacity assessment, which, among other things, limits plaintiff to "unskilled, routine, and repetitive" work with only "occasional[] contact with the public." (AR 16).

Accordingly, a remand or reversal is not warranted on this basis.

### 5.    State Agency Physician

Plaintiff contends that the ALJ failed properly to consider the opinions of Dr. N. Haroun, a state agency reviewing physician, that plaintiff had "moderate

1  limitations in her ability to perform detailed tasks, deal with the public, and set
2  goals and make plans independently" and that plaintiff was capable of following
3  "one and two part instructions." (Plaintiff's Motion at 6) (citing AR 578-80). The
4  Court finds that a reversal or remand is not warranted because any error in the
5  foregoing respect was harmless.

6      First, plaintiff fails to demonstrate that Dr. Haroun's opinions that plaintiff
7  had moderate limitations in his abilities to perform detailed tasks, to "deal with the
8  public," and to "set goals and make plans independently," reflect an impairment
9  that would last for a continuous twelve-month period much less additional
10 limitations which are not otherwise accounted for in the ALJ's residual functional
11 capacity assessment which restricted plaintiff to "unskilled, routine, and
12 repetitive" work (*i.e.*, work which did not require the ability to perform detailed
13 tasks), and only "occasional[] contact with the public." (AR 16).

14     Second, even assuming the ALJ erred in not expressly considering Dr.
15 Haroun's opinion that plaintiff was "[a]ble to understand, remember, and follow
16 one and two part instructions," any such error would be harmless. Plaintiff fails to
17 demonstrate that any such limitations are not already accounted for in the ALJ's
18 residual functional capacity assessment, which limits plaintiff to "unskilled,
19 routine, and repetitive" work. (AR 16) (emphasis added). Moreover, Dr. Haroun
20 did not opine that plaintiff could not work for any twelve-month period, and
21 plaintiff points to no examining physician who did. See Matthews v. Shalala, 10
22 F.3d 678, 680 (9th Cir. 1993) (in upholding the Commissioner's decision, the
23 Court emphasized: "None of the doctors who examined [claimant] expressed the
24 opinion that he was totally disabled"); accord Curry v. Sullivan, 925 F.2d 1127,
25 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery,
26 no doctor suggested claimant was disabled). Any such error is also harmless since
27 other evidence in the record supported the ALJ's ultimate non-disability
28 determination.

1   Specifically, according to the Dictionary of Occupational Titles ("DOT"),[6] the
2   representative job of "floor waxer" identified by the vocational expert at the
3   hearing and incorporated into the ALJ's findings at step five requires only the
4   ability to "[a]pply commonsense understanding to carry out simple one-or-
5   two-step instructions." See DOT § 381.687-034 (Floor Waxer) (emphasis added).
6   Since the reasoning requirements of one of the representative jobs the ALJ
7   identified at step five did not exceed Dr. Haroun's limitation to "one and two part
8   instructions," the ALJ's asserted error was harmless.  Cf. Brawner v. Secretary of
9   Health and Human Services, 839 F.2d 432, 434 (9th Cir. 1988) (ALJ's error in
10  classifying claimant's past relevant work as "light" found harmless since ALJ
11  identified "other light work" claimant was able to perform); see also Sawyer v.
12  Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (error in ALJ's failure properly to
13  consider medical opinion evidence considered harmless "where the mistake was
14  nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability
15  conclusion. . . .") (citing Stout, 454 F.3d at 1055); see also Molina, 674 F.3d at
16  1115 (ALJ error generally harmless where it is "inconsequential to the ultimate
17  nondisability determination") (citations and quotation marks omitted).

18          Accordingly, a remand or reversal is not warranted on this basis.

19      **B.      The ALJ Properly Evaluated Plaintiff's Credibility**

20              **1.      Pertinent Law**

21          "To determine whether a claimant's testimony regarding subjective pain or
22  symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v.
23  Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, "the ALJ must determine

24

25  _____

26  [6]ALJs routinely rely on the DOT in determining the skill level of a claimant's past work.
    Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R.
27  §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job information).  The DOT is the
    presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir.
28  1995).

whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." Orn, 495 F.3d at 635 (citation and quotation marks omitted). In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." Bunnell, 947 F.2d at 346 (citing Social Security Ruling 88-13) (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. Thomas, 278 F.3d at 958-59.

If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

### 2.    Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 5-6, 7-9). The Court disagrees.

13

First, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities.  See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony).  For example, as the ALJ noted, contrary to complaints that she is unable to concentrate and has poor memory, plaintiff testified that she was enrolled full-time at Victor Valley Community College, took three online courses and two in-person classes, and earned at least some As and Bs.  (AR 17, 22, 50-52).  In addition, plaintiff testified at the hearing that during the day she would read "a lot," cook (although she tended to burn things), try to wash dishes, use the computer for her online classes and Facebook social networking, attend church every Sunday, and sporadically attend a church women's retreat and bible study. (AR 18, 52-54).  In her Function Report, plaintiff stated, in part, that she lived with her boyfriend, and that she could prepare simple meals, study test preparation materials, study the bible, clean, shop in stores for groceries, watch television, occasionally babysit to earn money for rent, take care of her pets, wash dishes, sweep, read, knit, spend time with others (playing video games, watching movies, talking/texting on the phone), and attend church or the library every two weeks. (AR 18) (citing Exhibit 4E at 5-10 [AR 180-85]).  Therefore, it was reasonable for the ALJ to conclude that plaintiff was "not limited to the extent one would expect[] given [plaintiff's] complaints of disabling symptoms and limitations." (AR 18).

Plaintiff states that "her ability to sustain a C average in a junior college through a disabled student program is not consistent with or equivalent to the ability to perform and sustain full time competitive employment."  (Plaintiff's Motion at 5).  While a claimant "does not need to be 'utterly incapacitated' in

1    order to be disabled," <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001), this

2    does not mean, as plaintiff suggests, that an ALJ must find that a claimant's daily

3    activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a

4    day, five days a week) in order to discount the credibility of conflicting subjective

5    symptom testimony.  <u>See</u> <u>Molina</u>, 674 F.3d at 1113 ("[An] ALJ may discredit a

6    claimant's testimony when the claimant reports participation in everyday activities

7    indicating capacities that are transferable to a work setting . . . [e]ven where those

8    activities suggest some difficulty functioning. . . .") (citations omitted).  Here, the

9    ALJ properly discounted plaintiff's subjective-symptom testimony to the extent

10   plaintiff's daily activities were inconsistent with a "totally debilitating

11   impairment."  <u>Id</u>.; <u>see</u>, <u>e.g.</u>, <u>Curry</u>, 925 F.2d at 1130 (finding that the claimant's

12   ability to "take care of her personal needs, prepare easy meals, do light housework

13   and shop for some groceries . . . may be seen as inconsistent with the presence of a

14   condition which would preclude all work activity") (citing <u>Fair v. Bowen</u>, 885

15   F.2d 597, 604 (9th Cir. 1989)).  To the extent plaintiff argues that her daily

16   activities are not inconsistent with her alleged disabling symptoms and limitations

17   (Plaintiff's Motion at 5-6), the Court will not second-guess the ALJ's reasonable

18   determination to the contrary, even if the evidence could give rise to inferences

19   more favorable to plaintiff.  <u>See</u> <u>Robbins</u>, 466 F.3d at 882 (citation omitted).

20          Second, the ALJ properly discounted plaintiff's credibility in part because

21   plaintiff's allegations of disabling symptoms were not fully corroborated by the

22   objective medical evidence.  <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir.

23   2001) ("While subjective pain testimony cannot be rejected on the sole ground that

24   it is not fully corroborated by objective medical evidence, the medical evidence is

25   still a relevant factor in determining the severity of the claimant's pain and its

26   disabling effects.") (citation omitted).  As the ALJ noted, and as discussed above,

27   although the medical expert's testimony and the medical records support a finding

28   that plaintiff had a seizure disorder, such evidence does not reasonably support

1   plaintiff's allegation that she experienced seizures three to five times a day.  (AR

2   19, 21, 37-38) (citing AR 231 [EEG showing "left temporal lobe dysfunction"

3   possibly "seizure-focused"]; AR 233 [MRI of plaintiff's brain reflected only

4   "incidental finding" of cyst in left temporal lobe]; AR 234 [brain MRA "within

5   normal limits"]; AR 621-24 [EEG video monitoring detected no evidence of

6   "subclinical, electrographic, electroclinical, or behavioral seizures" or "potential

7   epileptogenic abnormalities"]).

8        Accordingly, a remand or reversal is not warranted on this basis.

9   **V.    CONCLUSION**

10       For the foregoing reasons, the decision of the Commissioner of Social

11  Security is affirmed.

12       LET JUDGMENT BE ENTERED ACCORDINGLY.

13  DATED:   January 31, 2014

14                                         _____
                                                      /s/
15                                         Honorable Jacqueline Chooljian
                                           UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28